# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**WESLEY COOK,**
**Claimant Below, Petitioner**

**FILED**
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-42**          (JCN: 2022017190)

**ARCH COAL d/b/a COAL MAC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Wesley Cook appeals the January 8, 2026, order of the Workers' Compensation Board of Review ("Board"), which reversed the claim administrator's order and granted Mr. Cook a 0% permanent partial disability ("PPD") award for occupational pneumoconiosis ("OP"). Respondent Arch Coal d/b/a Coal Mac ("Coal Mac") filed a response.[1] Mr. Cook did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On January 20, 2022, Mr. Cook signed an Employees' Report of Occupational Pneumoconiosis stating he was last exposed to the hazards of OP on August 8, 2018, after working in various coal mines since 1980. On April 21, 2022, the claim administrator held Mr. Cook's claim compensable for OP and found he was entitled to the statutory presumption based on his employment history.[2]

---

[1] Mr. Cook is represented by Reginald D. Henry, Esq., and Lori J. Withrow, Esq. Coal Mac is represented by T. Jonathan Cook, Esq.

[2] West Virginia Code § 23-4-8c(b) (2009) provides that an employee's respiratory disability is presumed to have arisen out of and in the course of his or her employment if certain dust exposure criteria is met. However, this presumption is not conclusive.

1

Prior to filing his claim for OP, Mr. Cook underwent pulmonary function studies from Tug River Health Association performed on December 1, 2021. J. Randolph Forehand, M.D., interpreted the studies as showing no impairment and noted a significant improvement post bronchodilator. Mr. Cook also underwent a chest radiograph on December 1, 2021, and Dr. Forehand performed a B reading and deemed the image to be of quality 1 and negative for OP.

After his claim was held compensable for OP, the OP Board examined Mr. Cook on September 6, 2022, and found that Mr. Cook was sixty years old, had stopped working in August of 2018, and was exposed to occupational dust hazards for thirty-nine years as an underground coal miner and electrician. Mr. Cook reported that he had suffered from occasional shortness of breath productive of yellow sputum for four to five years and had occasional wheezing for three to four years. The OP Board noted no rales, wheezing, or respiratory distress at rest. The OP Board compared Mr. Cook's recent chest x-ray with the OP Board's x-rays of May 28, 1993, and found that the imaging showed insufficient pleural or parenchymal changes to establish a diagnosis of OP. The OP Board determined that Mr. Cook had a 10% pulmonary impairment attributable to OP based on its September 6, 2022, diffusion study which showed a DLCO of 74 percent predicted and a DL/VA of 89 percent predicted.

On November 15, 2022, the claim administrator granted Mr. Cook a 10% PPD award for OP based on the OP Board's September 6, 2022, examination. On June 12, 2023, Mr. Cook underwent pulmonary function studies at the CAMC Occupational Lung Center. The FVC was 112 percent predicted, and diffusion studies showed a DLCO of 95 percent predicted and a DL/VA of 92 percent predicted.

On October 22, 2025, the OP Board testified at a final hearing. John Willis, M.D., the OP Board's radiologist, reviewed the OP Board's x-rays of May 28, 1993, and September 6, 2022. He testified that the September 6, 2022, film was of good quality, showed no changes consistent with OP, and stated he would not make any other diagnoses based on that image. The OP Board's Chairperson, Jack Kinder, M.D., testified that he concurred with Dr. Willis' interpretation.

Dr. Kinder stated that the OP Board's 10% impairment finding from its September 6, 2022, examination was based on the diffusion study. He stated that the pre-bronchodilator spirometry could represent impairment, but the post-bronchodilator spirometry had better volumes and represented no impairment. He stated that OP is considered a permanent disease, and there should be no improvement in impairment. However, in this case, the FEV1 improved by 20% and the FVC improved by 11%, which suggests a bronchospastic disease, such as an asthma type disease or COPD. Dr. Kinder testified that he would not attribute the bronchospastic disease to coal mine dust exposure. Dr. Kinder further testified that the June 12, 2023, CAMC Occupational Lung Center diffusion study showed better flow compared to the OP Board's study. He stated that the

previous finding of decreased diffusion was not a permanent impairment, as the more recent diffusion study showed improvement to 95% of the predicted value. As a result, there was no evidence of impairment or justification for a diagnosis of OP. Based on these studies, Dr. Kinder opined that Mr. Cook has no evidence of permanent impairment. When asked why there was a significant difference between the OP Board's diffusion study and the June 12, 2023, CAMC Occupational Lung Center study, Dr. Kinder was unsure but stated Mr. Cook had very large broncho-reversibility, and he felt that there was some underlying lung disease unrelated to OP. Dr. Kinder stated that both tests were valid. Mallinath Kayi, M.D., testified that he concurred with Drs. Willis and Kinder.

On January 8, 2026, the Board entered an order reversing the claim administrator's November 15, 2022, order. The Board determined that Mr. Cook had no permanent partial disability due to OP based on the OP Board's October 22, 2025, testimony, which was determined to be credible. It is from this order that Mr. Cook now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Cook asserts one assignment of error and argues the Board was clearly wrong in finding he did not prove by a preponderance of evidence that he sustained more than 0% PPD due to OP. Specifically, Mr. Cook argues the Board failed to consider, analyze, and discuss the record as a whole. We disagree. In *Rhodes v. Workers' Comp. Div.*, 209 W. Va. 8, 17, 543 S.E.2d 289, 298 (2000), the Supreme Court of Appeals of West Virginia ("SCAWV") held that the party protesting the findings of the OP Board has the burden to establish that the OP Board was clearly wrong.

3

In this case, the Board found that the OP Board was not clearly wrong in determining that Mr. Cook had no impairment attributable to OP. The Board noted that the OP Board found no radiographic evidence of OP and determined that the previous impairment was not permanent because the most recent studies showed no impairment.[3] The Board found that the testimony of the OP Board was supported by credible medical evidence, had not been shown to be clearly wrong, and was not contradicted by any other medical evidence.

Upon review, we conclude that the Board was not clearly wrong in finding that Mr. Cook failed to establish that the OP Board was clearly wrong in recommending a 0% impairment. As the SCAWV has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in finding that Mr. Cook failed to establish that the OP Board was clearly wrong.

Accordingly, we affirm the Board's January 8, 2026, order.

Affirmed.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

---

[3] The Board's order misstates the evidence that was relied upon by the OP Board. The OP Board reviewed the Tug River Health Association studies performed on December 1, 2021; the OP Board's own studies performed on May 28, 1993, and September 6, 2022; and the CAMC Occupational Lung Center studies performed on June 12, 2023. The Board found that the OP Board's testimony was supported by credible medical evidence but confused the older 2021 Tug River Health Association study, discounted by the OP Board, with the most recent 2023 CAMC Occupational Lung Center study, relied upon by the OP Board.